Filed 1/12/23  Kracke v. City of Santa Barbara CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THEODORE P. KRACKE,<br>Plaintiff and Appellant,<br><br>v.<br><br>CITY OF SANTA BARBARA,<br>Defendant and Respondent. | 2d Civ. No. B316993<br>(Super. Ct. No. 56-2016-00490376-CU-MC-VTA)<br>(Ventura County) |

Theodore P. Kracke sued the City of Santa Barbara (City), claiming it had unlawfully banned short-term vacation rentals (STVRs) within the California coastal zone.  Kracke prevailed in that action, and we affirmed the trial court's order granting his petition for writ of mandate and enjoining the City's enforcement of the STVR ban in the coastal zone unless it satisfies certain conditions.  (*Kracke v. City of Santa Barbara* (2021) 63 Cal.App.5th 1089, 1098 (*Kracke*).)

Kracke appeals the trial court's denial of his second motion for attorney fees under the private attorney general statute, Code

of Civil Procedure section 1021.5.[1]  (See *Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1217 (*Whitley*).)  Kracke contends the trial court abused its discretion by denying his motion, but he failed to meet his burden of producing substantial evidence of his personal financial stake in the litigation.  In the absence of such evidence, we affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Since 2007, Kracke has been "the proprietor of Paradise Retreats World Class Vacation Rentals ('Paradise Retreats'), a local business engaged in operating, managing and servicing vacation rentals in and around the [City]."  Kracke markets his business as "the leader in luxury vacation rental management."  The rental rates for the properties he manages range from $400 to $5,984 per night, plus taxes and fees.

"Prior to 2015, the City . . . encouraged the operation of [STVRs] along its coast by treating them as permissible residential uses.  In June 2015, the City began regulating STVRs as 'hotels' under its municipal code, which effectively banned STVRs in the coastal zone.  The City did not seek a coastal development permit (CDP) or an amendment to its certified local coastal program (LCP) prior to instituting the ban."  (*Kracke*, *supra*, 63 Cal.App.5th at p. 1092.)

In November 2016, Kracke petitioned for a writ of mandate enjoining the City's enforcement of the STVR ban in the coastal zone unless it obtains a CDP or LCP amendment.  During discovery, Kracke declined to produce evidence of the rental rates and fees his business charged to overnight guests prior to 2015.  Kracke stipulated he would not introduce during trial any evidence referencing his business.

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise stated.

2

Kracke also did not provide this evidence in support of his first motion for attorney fees. The trial court denied that motion, finding he had failed to establish his personal financial stake in the action. Kracke presented evidence that only 9.7 percent of his income is from STVRs in the coastal zone, but the court found "this bare percentage . . . unhelpful . . . ."

Kracke renewed his request for attorney fees in a second motion filed after we affirmed, in a published decision, the trial court's order granting his petition for writ of mandate. (*Kracke*, *supra*, 63 Cal.App.5th at p. 1098.) "[A]rmed with a published opinion establishing the broad public impact of this case," Kracke claimed he had incurred over $600,000 in attorney fees, and that his business netted just $41,693 from his coastal zone properties during the period critical litigation decisions were being made in the case. Kracke maintained he had more than satisfied his entitlement to section 1021.5 fees.

The trial court rejected the City's argument that Kracke was equitably estopped from renewing his motion for attorney fees, but again denied his motion. It stated: "Kracke once again has not presented substantial evidence – at least some of which he presumably has available to him and could have easily submitted (e.g., regarding his historical earnings from STVRs in the Coastal Zone both before and after the STVR ban) -- in support of his claim that his costs of litigating this lawsuit outweigh his personal stake in the action. In the absence of substantial evidence of Kracke's expected financial benefit from this action, it would constitute an abuse of discretion for the court to grant Kracke's request for [section] 1021.5 fees."

## II.  DISCUSSION

### A.    *Standard of Review and Applicable Law*

"The burden is on the party requesting section 1021.5 fees to demonstrate all elements of the statute, including that the litigation costs transcend his or her personal interest. . . .  'The trial court's judgment on whether a plaintiff has proved each of the prerequisites for an award of attorney fees under section 1021.5 "will not be disturbed unless the appellate court is convinced that it is clearly wrong and constitutes an abuse of discretion."'  [Citation.]  With respect to the issues of necessity and financial burden, the trial court abuses its discretion in making an award under section 1021.5 when there is no substantial evidence to support the required findings."  (*Millview County Water Dist. v. State Water Resources Control Bd.* (2016) 4 Cal.App.5th 759, 769 (*Millview*).)

"'[T]he Legislature adopted section 1021.5 as a codification of the "private attorney general" attorney fee doctrine that had been developed in numerous prior judicial decisions.'"  (*Whitley*, *supra*, 50 Cal.4th at p. 1217.)  Section 1021.5 "is an exception to the general rule in California, commonly referred to as the American rule and codified in section 1021, that each party to a lawsuit must ordinarily pay his or her own attorney fees."  (*Adoption of Joshua S.* (2008) 42 Cal.4th 945, 954.)  "'The doctrine rests upon the recognition that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible.'"  (*Whitley*, at p. 1218, italics omitted.)

4

"A court may award attorney fees under section 1021.5 only if the statute's requirements are satisfied.  Thus, a court may award fees only to 'a successful party' and only if the action has 'resulted in the enforcement of an important right affecting the public interest . . . .'  [Citation.]  Three additional conditions must also exist:  '[1] a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, [2] the necessity and financial burden of private enforcement . . . are such as to make the award appropriate, and [3] such fees should not in the interest of justice be paid out of the recovery, if any.'"  (*Vasquez v. State of California* (2008) 45 Cal.4th 243, 250-251; *Whitley*, *supra*, 50 Cal.4th at p. 1214.)

In evaluating the element of financial burden, "the inquiry before the trial court [is] whether there were 'insufficient financial incentives to justify the litigation in economic terms.'" (*Summit Media, LLC v. City of Los Angeles* (2015) 240 Cal.App.4th 171, 193 (*Summit Media*), quoting *Whitley*, *supra*, 50 Cal.4th at p. 1211.)  If the plaintiff had a "personal financial stake" in the litigation "sufficient to warrant [the] decision to incur significant attorney fees and costs in the vigorous prosecution" of the lawsuit, an award under section 1021.5 is inappropriate.  (*Summit Media*, at pp. 193-194; *Millview*, *supra*, 4 Cal.App.5th at pp. 768-769; *Whitley*, at p. 1211 ["[A] litigant who has a financial interest in the litigation may be disqualified from obtaining such fees when expected or realized financial gains offset litigation costs"].)

"'Section 1021.5 was not designed as a method for rewarding litigants motivated by their own pecuniary interests who only coincidentally protect the public interest.'" (*Davis v. Farmers Ins. Exchange* (2016) 245 Cal.App.4th 1302, 1329 (*Davis*).)  "'Instead, its purpose is to provide some incentive for

5

the plaintiff who acts as a true private attorney general, prosecuting a lawsuit that enforces an important public right and confers a significant benefit, despite the fact that his or her own financial stake in the outcome would not by itself constitute an adequate incentive to litigate.'" (*Flannery v. California Highway Patrol* (1998) 61 Cal.App.4th 629, 635.)

In sum, "'"[a]n award on the 'private attorney general' theory is appropriate when the cost of the claimant's legal victory transcends his personal interest, that is, when the necessity for pursuing the lawsuit placed a burden on the plaintiff 'out of proportion to his individual stake in the matter.' [Citation.]'" 'This requirement focuses on the financial burdens and incentives involved in bringing the lawsuit.'" (*Whitley*, *supra*, 50 Cal.4th at p. 1215.)

### B. The Trial Court Did Not Abuse Its Discretion by Denying Kracke's Second Motion for Fees Under Section 1021.5

Kracke contends the trial court abused its discretion by considering only the financial burden requirement in denying his motion for attorney fees. He claims the court was required to make findings as to all the statutory criteria and engage in a balancing test. We disagree. "[W]here the court finds that one of the statutory criteria is *not* met, it is unnecessary to make findings concerning the remaining criteria." (*Satrap v. Pacific Gas & Electric Co.* (1996) 42 Cal.App.4th 72, 81, fn. omitted (*Satrap*); *Millview*, *supra*, 4 Cal.App.5th at p. 773.)

Kracke further asserts the trial court abused its discretion by denying his motion for attorney fees because he failed to meet his burden of establishing his personal financial stake in the case. Once again, we disagree.

In *Millview*, the Court of Appeal determined the plaintiffs had failed to provide substantial evidence to support a finding

that pursuing the lawsuit placed a burden on them out of proportion to their individual stake.  (*Millview*, *supra*, 4 Cal.App.5th at p. 770-771.)  The plaintiffs in that case prevailed in an action challenging a proposed cease and desist order (CDO).  "With respect to the 'financial burden' element, [the] plaintiffs argued the litigation would result in no financial benefit to them because they did not receive a monetary award.  At most, they argued, the litigation protected 'an interest that they previously had.'"  (*Id.* at p. 766.)

The court observed, however, that "Millview had a similarly ample financial incentive for challenging issuance of the proposed CDO.  Most obviously, Millview had paid $500,000 for an asset that would be rendered worthless if a CDO was entered severely curtailing diversion under the [applicable] claim.  Preserving the value of its investment was a substantial incentive."  (*Millview*, *supra*, 4 Cal.App.5th at p. 770; see *Summit Media*, *supra*, 240 Cal.App.4th at pp. 192-194  [given the threat to its profitable business, "[t]he record supports the trial court's conclusion that plaintiff had a personal stake in this litigation that was sufficient to warrant its decision to incur significant attorney fees and costs in the vigorous prosecution of this lawsuit"]; *Children & Families Com. of Fresno County v. Brown* (2014) 228 Cal.App.4th 45, 60-63 [fee award inappropriate because the plaintiff stood to lose millions in funding if its lawsuit was unsuccessful].)

Kracke had a similar financial incentive to challenge the STVR ban.  It is undisputed he has financial interests in rental properties in the coastal zone.  For example, Kracke alleged in his first amended petition for writ of mandate that "[a]t all times relevant hereto since October of 2012, [he] has been the owner of the real property commonly known as 16 East Arrellaga Street in

Santa Barbara . . . , which he operates as a short term vacation rental . . . ."  He further alleged that "[a]t all times relevant hereto since 2007, [he] has been the proprietor of [Paradise Retreats], a local business engaged in operating, managing and servicing vacation rentals in and around the [City].  Paradise Retreats currently operates twenty-five (25) rental properties within the [City's] limits, eight (8) of which are located within the [City's] Coastal Zone . . . ."  Kracke noted he had "577 total guest reservations" between January 1, 2015 and November 3, 2016.

Given Kracke's financial interest in these properties, he had ample financial incentive to challenge the STVR ban in the coastal zone.  (See *Millview*, *supra*, 4 Cal.App.5th at p. 770.)  It is true that we do not look to the plaintiff's actual recovery after trial; instead, we consider """the estimated value of the case at the time the vital litigation decisions were being made.""  [Citation.]  The reason for the focus on the plaintiff's expected recovery at the time litigation decisions are being made, is that [section] 1021.5 is intended to provide an incentive for private plaintiffs to bring public interest suits when their personal stake in the outcome is insufficient to warrant incurring the costs of litigation."  (*Satrap*, *supra*, 42 Cal.App.4th at p. 79.)

Kracke contends the evidence he produced of his actual STVR rental income between 2016 and 2018, the period in which he claims vital litigation decisions were being made, established his personal financial stake.  He is incorrect.  The City began enforcing the STVR ban in June 2015.  Evidence of Kracke's relatively minimal STVR income after that date cannot qualify as substantial evidence of his personal financial stake.  (See *Millview*, *supra*, 4 Cal.App.5th at p. 769.)  Rather, that stake is what he would have *expected* to earn during that period in the absence of the STVR ban.  (See *ibid.*)

The trial court suggested, by way of example, that evidence of Kracke's historical earnings from his STVRs in the coastal zone could satisfy his burden of proving his expected financial gain. Kracke declined to produce that evidence and, notwithstanding his burden to prove the issue, offered no other means of estimating his expected financial gain. The court properly ruled that "[i]n the absence of substantial evidence of Kracke's expected financial benefit from this action, it would constitute an abuse of discretion for the court to grant Kracke's request for [section] 1021.5 fees."[2]

## III. DISPOSITION

The order denying Kracke's motion for fees is affirmed. The City shall recover its costs on appeal.

<u>NOT TO BE PUBLISHED.</u>

CODY, J.[*]

We concur:

GILBERT, P.J.

BALTODANO, J.

---

[2] Given our decision, we need not reach the City's collateral estoppel argument.

[*]Judge of the Ventura Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California constitution.

Mark S. Borrell, Judge

Superior Court County of Ventura

_____

Rogers, Sheffield & Campbell, Travis C. Logue and Nathan C. Rogers, on behalf of Plaintiff and Appellant.

Ariel Pierre Calonne, City Attorney, and Robin L. Lewis, Assistant City Attorney, on behalf of Defendant and Respondent.